UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CHRISTINA M.,                                                Case No. 1:20-cv-01022-AR

                Plaintiff,                                    OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

**ARMISTEAD, Magistrate Judge**

    In this judicial review of the Commissioner's final decision denying Social Security

benefits, Christina (her last name omitted for privacy) challenges the Administrative Law

Judge's evaluation of her subjective symptom testimony and of lay witness testimony. She also

contends that the ALJ should have ordered a psychological examination to supplement the record

and that the ALJ's vocational finding at step five is not supported by substantial evidence. Pl. Br.

Page 1 – OPINION AND ORDER

at 7-11, ECF No. 18. As explained below, the ALJ did not err. The Commissioner's decision is AFFIRMED.[1]

## ALJ'S DECISION

In denying Christina's applications for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI), the ALJ followed the five-step sequential evaluation process.[2] The ALJ determined that Christina had severe psychological impairments (major depressive disorder; anxiety; mood disorder; borderline personality disorder) and physical impairments (obesity; migraines; tachycardia; mild left foot degenerative joint disease with heel spurs; mild cervical degenerative disc disease; asthma; chronic fatigue syndrome; and obstructive sleep apnea). Tr. 18. Christina's reported symptoms were an inability to work due to depression, anxiety, and back pain; difficulty working with the public; daily two- to three-hour migraines requiring her to lay down in a dark and quiet place; constant fatigue; and "fleeting" suicidal thoughts. Tr. 36, 39. 41, 44 46, 49, 52.

Regarding the RFC, the ALJ considered the evidence in the case record and found that Christina's medically determinable impairments explained some of her symptoms but that the medical evidence and her reports of daily living were not entirely consistent with her statements concerning the intensity, persistence, and limiting effects of her alleged symptoms. Tr. 22.

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Notably, the ALJ considered the extent to which Christina was able to care for her mother, her friend's dog and friend's husband, and that she performed household chores and had some crafting hobbies. Tr. 22. Further, the ALJ explained that Christina's symptoms were either intermittent, improving, did not interfere with her daily activities, or could be managed with treatment. Tr. 22-24. Given those findings (and considering Christina's age, education, and work experience), the ALJ set out various physical and mental limitations in the RFC, including that Christina "should perform only low stress work" that involves no public contact and occasional coworker and supervisor contact. Tr. 21. With that RFC, the ALJ determined that were enough jobs in the national economy that Christina could perform, such as photocopy machine operator, collator operator, and inserting machine operator.[3] Tr. 26-27.

## DISCUSSION

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v.*

---

[3]     As recently noted in *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022), the SSA has been working on a transition to a new Occupational Information System since 2008. The transition has not yet occurred, and the Ninth Circuit has encouraged the SSA, along with its sister circuits, "to make the transition to a system that more accurately reflects available jobs in the current economy." *Id.*

Page 3 – OPINION AND ORDER

*Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Christina advances four arguments challenging the ALJ's decision, and the court, mindful of the standard of review, addresses each in turn.

## A.    *Duty to Develop Record*

Christina argues that, because the ALJ found the opinions of the state agency reviewing doctors "not persuasive" and the medical record lacked medical source statements from Christina's own treating or examination providers assessing functional limitations, there were no medical opinions upon which the ALJ could rely. In that event, Christina asserts that the ALJ should have ordered a psychological consultative examination. *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). Without that examination, in Christina's view, the record was "insufficient to allow the agency to make a determination" and the ALJ's RFC finding is therefore without substantial evidence. Pl. Br. at 5-6; Pl. Reply. Br. at 2, ECF No. 20.

Although the burden of demonstrating disability ultimately lies with the claimant, the ALJ "has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). That duty, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459-60. When confronted with ambiguous evidence or a record inadequate to permit proper evaluation of the evidence, the ALJ should "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996). This inquiry may include (1) making a

reasonable attempt to obtain additional medical evidence from the claimant's treating sources; (2) ordering a consultative examination where the medical evidence is incomplete or unclear; (3) subpoenaing the claimant's physicians or their records; (4) continuing the hearing; and (5) keeping the record open for supplementation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); 20 C.F.R. §§ 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A) & (B).

Christina has not demonstrated that the ALJ's failure to order a psychological consultative examination was error. Under 20 C.F.R. §§ 404.1517, the ALJ has discretion to order a consultative examination if the claimant's "medical sources cannot or will not give us sufficient medical evidence about [the claimant's] impairment" to make a disability determination. *See Kimberly S. v. Berryhill*, Case No. 3:17-cv-1788-JR, 2018 WL 6424765, at *3 (D. Or. Nov. 19, 2018) ("The Commissioner 'has broad latitude in ordering a consultative examination.'" (quoting *Diaz v. Sec. of Health and Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990))). Here, although the record lacked medical opinion statements from treating providers, the ALJ still had ample evidence on which to base the RFC, including Christina's testimony, functional reports, and approximately 600 pages of medical records from her providers reflecting treatment she received for anxiety, depression, and various physical impairments. Tr. 35-52, 222-29, 282-905. The ALJ also left the record open for supplementation for ten days after the hearing, leaving Christina the opportunity to submit medical source statements during that period. Tr. 54; *Chase v. Colvin*, 665 F. App'x. 583, 586 (9th Cir. 2016) ("Even assuming arguendo that further development of the record in this case was required, the ALJ satisfied this duty by 'keeping the record open after the hearing.'" (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001))). Given this evidence and opportunity for supplementation, the ALJ

appropriately determined the record was sufficient for assessing the limitations imposed by Christina's alleged mental and physical limitations, without need for a consultative examination. The ALJ did not err.

**B.**    ***Subjective Symptom Testimony***

Christina also argues that the ALJ improperly rejected her subjective symptom testimony. In Christina's view, the ALJ failed to articulate specific, clear and convincing findings in discounting her symptom testimony. Christina maintains, contrary to the findings of the ALJ, that her activities and improvements are not inconsistent with her testimony. Additionally, she contends that the ALJ incorrectly singled out periods of well-being to discredit her testimony. *See Garrison*, 759 F.3d at 1018 (stating that "the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit" the claimant). As the court explains, the ALJ's findings were sufficiently specific, clear and convincing.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony about the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008);

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

At the hearing and in function reports, Christina alleged that she is unable to work due to depression, anxiety, and back pain. Tr. 36, 39. 41, 46. She reported difficulty working with the public and noted that she was fired from a prior job for unprofessional conduct, including crying every day at work, lashing out at people, and saying inappropriate things. Tr. 46. She testified that she experiences migraines every day that last about two or three hours and require her to lay down in a dark and quiet place. Tr. 44. She also alleged constant fatigue and "fleeting" suicidal thoughts. Tr. 49, 52.

The ALJ made no finding of malingering and determined that Christina provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. Tr. 22. Nevertheless, the ALJ discounted the alleged severity, intensity, and persistence of Christina's symptom testimony as (1) inconsistent with her reported activities of daily living and (2) inconsistent with evidence showing improvement with treatment. Tr. 22-25. Christiana contends that neither reason is supported by substantial evidence. The court disagrees.

Turning to the first rationale, the ALJ appropriately found Christina's symptom testimony inconsistent with her reported activities. Tr. 22-24; *Garrison*, 759 F.3d at 1016 (stating that a

claimant's activities have "bearing on [her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Christina reported that in her free time, she reads, plays games, goes shopping, watches television, cross-stitches, cares for her cats, and performs chores. Tr. 222, 223, 226. She also cares for a friend's dog and takes it on walks, though she reported needing breaks on these walks due to her increased heart rate. Tr. 42. Most notably, Christina testified that she serves as a caregiver for her mother – who has substantial health and mobility issues – between eight and ten hours a day. Tr. 24, 35. In this role, Christina takes her mother to appointments, manages her medication and meals, and completes her shopping. Tr. 35-36.

The ALJ found Christina's reports that she is unable to work due to her depression and anxiety inconsistent with these activities. Specifically, the ALJ noted that Christina's ability to manage her mother's medication undermined her own testimony that she often cannot remember to take her own medications. Tr. 24. Likewise, the ALJ found the length of this reported care – eight to ten hours a day – inconsistent with Christina's allegation that she could not maintain full-time work. Tr. 24. These findings are fully supported by substantial evidence in the record. Based on the nature and duration of care Christina provides for her mother, the ALJ reasonably could find that her daily activities are inconsistent with her allegations of total disability and rationally discount her allegations on that basis.

Turning to the ALJ's second rationale, the court disagrees with Christina that the ALJ cherry-picked isolated instances of well-being to discredit her testimony. The ALJ discounted Christina's subjective symptom testimony finding that her physical symptoms are inconsistent with medical evidence showing improvement with treatment. Here, the treatment improvements

on which the ALJ relies "constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018. For instance, the ALJ noted that despite Christina's reports of severe neck pain and decreased range of motion in 2017, examinations that year showed no reduced range of motion in her neck. Tr. 22 (citing Tr. 544-52). The ALJ also noted that Christina's reports of fatigue conflicted with 2016 and 2017 treatment notes, in which she did not present with fatigue and reported that fatigue was not interfering with her daily activities. Tr. 22 (citing Tr. 501, 522, 554, 656). Christina also reported improvement in her energy levels after beginning treatment with Adderall in late 2017. Tr. 22 (citing Tr. 685, 695-712). The ALJ also found that treatment appeared to improve Christina's social-based symptoms, noting that she reported gradual improvement on medication in 2017, "feeling better overall" in 2018, and feeling less irritable and more high-energy in 2019. Tr. 24 (citing Tr. 629-31, 685, 695, 725, 732, 744, 764, 771-72, 784, 827-28, 876).

The ALJ was justified in relying on those sustained improvements and long periods without complaints as a basis to discount the severity of her alleged physical symptoms. The record shows that the ALJ's assessment is reasonable and each reason is supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Taken together, the ALJ's reasons provide a specific, clear and convincing basis to discredit the Christina's subjective symptom testimony.

**C.    *Lay Witness Testimony***

Christina's mother submitted a third-party function report on her behalf. Tr. 244-51. In the report, her mother alleged that Christina has difficulty concentrating and getting along with

others, handles stress poorly, has explosive emotional outbursts, and needs to set alarms to take her prescribed medications. Tr. 244-51. Christina argues that the ALJ failed to provide germane reasons to discount her mother's testimony. *See Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, [the ALJ] must give reasons that are germane to each witness.").

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An exception to the rule applies, however, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue*, 674 F.3d 1104, 1118-19; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

The symptoms testified to by Christina's mother are largely consistent with Christina's own testimony. As explained above, the court has determined that ALJ properly discounted that testimony with clear and convincing reasons supported by substantial evidence. Under Ninth Circuit precedent, those reasons apply with equal force to discount the lay witness statement from Christina's mother in this context. Accordingly, the ALJ did not err.

**D.**    *Step Five*

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary sources of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1). The DOT describes the requirements for each listed occupation, including the necessary General Educational Development (GED) levels—that is, the "aspects of education (formal or informal) . . . required of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most). *Id.* As relevant to this dispute, the DOT defines reasoning Level 1 and Level 2 as follows:

> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, App'x C, 1991 WL 688702 (4th ed. 1991).

The ALJ relies on the testimony of a vocational expert to identify specific occupations that a claimant can perform in light of her RFC. 20 CFR § 416.966(e); *Valentine*, 574 F.3d at

689. When there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ is required to reconcile that inconsistency by posing questions about the potential conflict. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Nevertheless, if the ALJ fails to ask the vocational expert about the potential conflict, that "procedural error" may be "harmless" if there is no conflict between the vocational expert's testimony and the DOT. *Id.* at 1154 n.19.

Here, the ALJ found at step five that Christina could perform the occupations of photocopy machine operator (DOT # 207.685-014), collator operator (DOT # 208.685-010), and inserting machine operator (DOT #208.685-018). Tr. 26-27. Each of these occupations requires GED Level 2 reasoning. *See* Pl. Br. at 5; Def. Br. at 11. Christina argues that this finding was not supported by substantial evidence because (1) the ALJ did not include subjective and lay witness reported limitations in her RFC and (2) there is an apparent conflict between the reasoning level required for those occupations and the level set forth in her RFC.

Christina's first argument is unavailing because, as explained above, the ALJ properly discounted her subjective symptom testimony and the lay testimony of her mother. Therefore, the ALJ was not required to incorporate those reported limitations into her RFC. *See Stubbs-Danielson*, 539 F.3d at 1174 (an ALJ's hypothetical question to the vocational expert need not include limitations which the ALJ has found to be not credible) (citing *Batson v. Comm'r. of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004)).

Christina's second argument is not well developed. The court infers from Christina's scant paragraph that she is contending that the ALJ's RFC is somehow internally inconsistent. Christina appears to suggest that the ALJ's statement that she is limited to "perform[ing] only

low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties, and no work on a conveyor belt" is consistent with only with Level 1 reasoning. *See* Pl. Br. at 10 (underlining statement in RFC). Christina suggests the jobs identified require her to handle more frequent variables or changes and are inconsistent with Level 1 reasoning, and that the ALJ has not met his burden at step five. Christina neither develops this argument nor points to any legal authority providing that either "low stress work" or "occasional changes" restrict her exclusively to jobs with Level 1 reasoning. Moreover, this argument is undermined by the ALJ's explicit statement that she "can understand, remember and carry out uninvolved and routine instructions that require only occasional predicable variations from standard procedures (*consistent with reasoning level 2*)." Tr. 21 (emphasis added). Thus, the ALJ explicitly found that Christina can perform work with Level 2 reasoning, which is consistent with the occupations identified by the vocational expert.

In summary, because Christina's RFC explicitly provides that she can work occupations with Level 2 reasoning and because the vocational expert's testimony is consistent with that limitation, the ALJ's step five finding is supported by substantial evidence and free of legal error.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

**CONCLUSION**

For the reasons stated above, the court AFFIRMS the Commissioner's final decision, and this action is DISMISSED.

IT IS SO ORDERED.

DATED November 8, 2022.

JEFFREY ARMISTEAD
United States Magistrate Judge